IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JOHN VANNOY,
    Plaintiff,

v.                                                      Civil Action No. 3:13-cv-797-JAG

THE FEDERAL RESERVE BANK
OF RICHMOND,
    Defendant.

## MEMORANDUM OPINION

The Federal Reserve Bank of Richmond disciplined and fired John Vannoy because he failed to properly communicate his work absences to his supervisors and engaged in insubordinate behavior. Although Vannoy suffered from depression and alcoholism, the Bank based Vannoy's termination on his misconduct. Because the Bank's decision does not violate the Americans with Disabilities Act ("ADA") or the Family Medical Leave Act ("FMLA"), the Court GRANTS the Bank's motion for summary judgment and DISMISSES the case with prejudice.

## I. Facts[1]

Vannoy began working for the Federal Reserve Bank of Richmond ("Bank") in 1994. For many years, Vannoy successfully fulfilled his responsibilities at the Bank and received positive performance reviews. Unfortunately, everything fell apart in late 2010.

Vannoy's problems began on October 22, 2010. On October 22, Vannoy sent one of his two supervisors—Matt Harris, the Vice President—an email stating that he was not feeling well

---

[1] Following settled law, summary judgment becomes appropriate when the movant establishes that no genuine dispute of any material fact exists and the party is thereby entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

and planned to take the rest of the day off. From October 22, 2010, through November 15, 2010, Vannoy sent intermittent email messages providing various reasons he would not be at work, such as "still running a fever and can't stop the sweats." (Dk. No. 67-4 at 5.)

On November 10, Vannoy checked into Saint Mary's hospital for treatment for alcoholism and depression. During his hospital stay, Vannoy spoke on the phone with the Bank's Medical Director, Dr. Victor Brugh, who told him he needed to go to a rehabilitation program. Vannoy's daughter informed Harris that Vannoy suffered from alcoholism and that she was trying to get Vannoy help for it. Vannoy left the hospital on November 13.

On November 15, Vannoy applied for short-term disability benefits. His primary care doctor sent the Bank a form indicating that Vannoy needed disability benefits through December 10. The Bank approved his short-term disability request and granted him FMLA leave through December 10.

The next day, however, Vannoy showed up at work. The Bank told him he could not return until his doctor cleared him. That same day, Vannoy's doctor sent a new message saying that Vannoy only needed leave through November 14, not December 10. The Bank adjusted his disability and FMLA leave accordingly. On November 18, Vannoy met with his superiors and told them that he had recently been hospitalized for depression and alcohol abuse.

On November 30, Vannoy drove to Baltimore to supervise a three-day engineering project involving equipment at the Bank's Baltimore office. He drove a bank car to Baltimore, and stayed (at Bank expense) in a hotel there. He did not show up to work on the project and went missing for the entire three days. Eventually, the Bank got hotel security to check on him, and word came back that he had a stomach flu or food poisoning. The Bank then told Vannoy to

leave the bank car in Baltimore for a co-worker to drive home. Disobeying this directive, Vannoy drove back to Richmond by himself.

The Bank then placed Vannoy on administrative leave and started to implement a Performance Improvement Plan ("PIP"). On December 7, a physician cleared Vannoy to return to work. On December 16, Robert Minteer, Vannoy's superior and the Assistant Vice President, went over Vannoy's performance evaluation with him. The evaluation noted his attendance problems, his failure to notify the Bank of his absences, and the lack of leadership he showed on Bank projects. Minteer also reviewed the PIP with Vannoy. The PIP required Vannoy to call—not email or text—a supervisor when he could not work. Notwithstanding the PIP, on December 20, Vannoy did not show up and emailed Minteer that he would not be at work.

The next day, Harris told Vannoy to complete the employee's portion of the PIP by the end of the day. Vannoy said he wanted to leave, because he had "no business being here." (Dk. No. 67-2, at 25-26.) Harris told him to complete the form. Later that day, Vannoy left without completing his portion of the PIP form. The Bank then fired him.

## II. Discussion

Vannoy alleges three claims under the Americans with Disabilities Act (ADA) and three additional FMLA claims. He claims the Bank violated the ADA by: (1) discriminating against him by downgrading his performance evaluation, placing him on a PIP, and ultimately firing him; (2) failing to accommodate his request for an accommodation; and (3) retaliating against him for requesting an accommodation. Vannoy's FMLA claims consist of: (1) interfering with his right to take FMLA leave by mailing him a defective notice of FMLA rights, (2) interfering with his right to take FMLA leave on December 21, 2010, when Harris told him he could not

3

leave work and needed to complete the PIP, and (3) retaliating against him for requesting FMLA leave. All of Vannoy's claims fail.

## A. Vannoy's ADA Claims

### 1. No Discrimination

The ADA prohibits discrimination "against a qualified individual on the basis of a disability." 42 U.S.C. § 12112(a). If, as here, the employee has no direct evidence of discrimination,[2] he may use the *McDonnell Douglas Corp. v. Green* framework to establish a circumstantial case of discrimination. 411 U.S. 792 (1973). Under this approach, the employee must first establish a prima facie case. To do so, the plaintiff must produce sufficient evidence to permit a fact finder to conclude: (1) that plaintiff is a member of a protected class; (2) that he suffered an adverse employment action; (3) that at the time the employer took the adverse employment action plaintiff was performing at a level that met his employer's legitimate expectations; and (4) that the discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. *Reynolds v. American Nat'l Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012); *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate some legitimate, non-discriminatory explanation which, if believed by the trier of fact, would support a finding that unlawful discrimination did not cause the employment action. *Ennis*, 53 F.3d at 58. If the defendant meets this burden, the presumption created by the prima facie case "drops out of the picture" and "the plaintiff bears the ultimate burden of proving that

---

[2] Direct evidence of discrimination is evidence in which the employer openly says that an improper motive led to an employment action: for instance, a statement that the employer does not want disabled people representing the company. Most modern employers are far too sophisticated to admit an unlawful motive, so virtually all cases now use the *McDonnell Douglas* scheme of proof.

4

she has been a victim of intentional discrimination." *Id.* (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 2748 (1993)).

### a. The Bank's Legitimate Expectations

Vannoy's job performance did not meet the Bank's legitimate expectations, so he cannot establish the third element of a prima facie case. Although Vannoy apparently thinks he did his job well, "[w]hether an employee is performing at a level that meets legitimate expectations is based on the employer's perception, and the employee's own, unsubstantiated assertions to the contrary are insufficient to stave off summary judgment." *Morrall v. Gates*, 370 F. App'x 396, 398 (4th Cir. 2010) (citing *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003)). Vannoy's chronic absences, his failure to communicate with his superiors, and his disobedience of direct orders let the Bank to create a PIP. Yet, immediately after the Bank implemented the PIP, Vannoy violated its terms.

Disabled or not, Vannoy must comply with the Bank's policies and directives. "The law is well settled that the ADA is not violated when an employer [disciplines or] discharges an individual based upon the employee's misconduct, even if the misconduct is related to a disability." *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 429 (4th Cir. 1999) (noting the law does not "require an employer to ignore such egregious misconduct by one of its employees, even if the misconduct was caused by the employee's disability").[3] A covered entity "may hold an employee who engages in the illegal use of drugs or who is an alcoholic to the same qualification standards for employment or job performance and behavior that such entity holds

---

[3] *See Martinson v. Kinney Shoe Corp.*, 104 F.3d 683, 686 n.3 (4th Cir. 1997); *Collings v. Longview Fibre Co.*, 63 F.3d 828, 832–33 (9th Cir. 1995), *cert. denied*, 516 U.S. 1048 (1996); *Despears v. Milwaukee Co.*, 63 F.3d 635, 637 (7th Cir. 1995); *Maddox v. University of Tenn.*, 62 F.3d 843, 846–48 (6th Cir. 1995); *cf. Little v. FBI*, 1 F.3d 255, 259 (4th Cir. 1993) (finding no liability under the Rehabilitation Act of 1973 when firing for misconduct, not for underlying alcoholism).

5

other employees, even if any unsatisfactory performance or behavior is related to the drug use or alcoholism of such employee." 42 U.S.C § 12114(c)(4). Vannoy's chronic absenteeism and inability to complete the essential duties of his job may well have stemmed from his underlying depression and substance abuse. But the law does not require an employer to ignore an employee's misconduct or blatant disregard for the employer's rules and policies. "[M]isconduct—even misconduct related to a disability—is not itself a disability" and may be a basis for dismissal. *Martinson*, 104 F.3d at 686 n.3.[4] Vannoy disregarded instructions from his supervisors on numerous occasions, leading to his lawful termination. He was not the victim of discrimination.

### b. No Reasonable Inference of Discrimination

For the same reasons, Vannoy cannot satisfy the fourth element of the prima facie case. He cannot show that his adverse employment action occurred under circumstances that raise a reasonable inference of unlawful discrimination. The undisputed facts in this case show that the Bank tolerated Vannoy's absences for two months, granted Vannoy leave to deal with his issues, and gave Vannoy a PIP despite his failure to follow directions for weeks. The last straw came when he violated the improvement plan immediately after it went into effect. Rather than create an inference of unlawful discrimination, the Bank's actions demonstrate a willingness to work with Vannoy. Ultimately, his continued misconduct led to his discharge.

---

[4] *See also Halpern v. Wake Forest Univ. Health Sciences*, 669 F.3d 454, 465 (4th Cir. 2012); *Tyndall v. Nat'l Educ. Centers, Inc. of California*, 31 F.3d 209, 214–15 (4th Cir. 1994) (finding the dismissal of an employee for attendance problems did not constitute discrimination, even if her disability caused her absences); *Little v. FBI*, 1 F.3d 255, 259 (4th Cir. 1993) (holding that employee could be terminated for intoxication, although it was related to alcoholism, a disability).

6

c. The Bank's Legitimate Non-discriminatory Reasons for its Action

Even if Vannoy could establish a prima facie case, for the reasons stated above, the Bank has met its burden to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Ennis*, 53 F.3d at 58. Vannoy has no evidence to rebut those reasons and cannot prove discrimination.

2. Failure to Accommodate under the ADA

To succeed on a failure to accommodate claim, a plaintiff must demonstrate that: (1) he had a disability; (2) the defendant had notice of the disability; (3) the plaintiff could perform the essential functions of his job with a reasonable accommodation; and (4) the defendant refused to make such an accommodation. *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001) (quoting *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999)).[5]

a. Notice of Disability

Under the ADA, the employee must inform the employer of two things: "the disability and the employee's need for accommodations for that disability." *Schneider v. Giant of Md., LLC*, 389 Fed. App'x 263, 270 (4th Cir. 2010). At various times, Vannoy and others told the Bank about his depression and excessive drinking. While his information was vague and contradictory, the Court will assume that the Bank knew about his disabilities. But the statements fail to notify the Bank that Vannoy's condition required special accommodations, or what those accommodations might be. Instead, Vannoy periodically came to work to do his job. His own doctor cleared him to return to work in mid-November. Nothing indicates that Vannoy needed an accommodation to continue his job. *Cf. Huppenbauer v. May Dep't Stores Co.*, 99 F.3d 1130 (4th Cir. 1996) ("Of course, even if "everyone" knew that [the employee] had a heart

---

[5] In addition, *see Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013); *Sydnor v. Fairfax County*, No. 1:10cv934, 2011 WL 836948, at *6 (E.D. Va. Mar. 3, 2011).

7

condition, such knowledge would not equal notice to [the employer] that the condition imposed limitations on [the employee] requiring special accommodation.").

In fact, Vannoy returned early from FMLA leave. On November 16, 2010, the Bank approved FMLA leave for Vannoy, but Vannoy returned to work prior to his leave's expiration. Vannoy also never provided any medical documentation regarding a need for accommodation. Indeed, on November 15, 2010, a few days prior to his conversation with his supervisors, Vannoy's physician released him to full work duty with no restrictions. On November 30, 2010, Vannoy went to work on his own accord and drove to Baltimore, where he promptly holed up in his hotel room for three days, allegedly because of stomach problems.

In discussing his problems with his employers, Vannoy's main point was that he could do the job. He never indicated that he needed some change in his work conditions, nor did his family or his doctor. Nor did they indicate that, with some unidentified accommodation, Vannoy could perform the essential functions of his job. The ADA does not require the Bank to divine what accommodations the employee needs, and the Bank is not liable for failing to accommodate Vannoy's disability.

### b. Failure to Engage in Interactive Process

Vannoy says the Bank did not engage in the interactive process to identify a reasonable accommodation. But "an employee cannot prevail simply by demonstrating that his employer failed to engage in the interactive process; he also must show that this failure to engage in the process resulted in the failure to find an appropriate accommodation." *Fleetwood v. Harford Sys. Inc.*, 380 F. Supp. 2d 688, 701 (D. Md. 2005). Thus, a plaintiff must show that a reasonable accommodation existed before a court may find that an employer's purported failure to engage in an interactive process was unlawful. *Jackson v. City of Chicago*, 414 F.3d 806, 813 (7th Cir.

2005); *Wells v. BAE Sys. Norfolk Ship Repair*, 483 F. Supp. 2d 497, 511 (E.D. Va.) *aff'd*, 250 F. App'x 552 (4th Cir. 2007). The plaintiff has not done so here.

Further, it is difficult to imagine an employer trying harder to help an employee to succeed. For most people, the Baltimore incident would drop the curtain on Vannoy's employment. After all, he drove a Bank car from Richmond to Baltimore, stayed in a hotel at the Bank's expense, did not show up for the project that took him to Baltimore, did not contact anyone to say he would be absent, and capped the trip off by ignoring an instruction not to drive the bank car home. Yet, the Bank kept Vannoy on and tried to work with him. If there was a failure to engage in an interactive process, it is because Vannoy simply denied that a problem existed.

### 3. Retaliation

The Bank did not retaliate against Vannoy for asserting his rights under the ADA. As noted above, the Bank bent over backwards to work with Vannoy, tolerating failure after failure to perform satisfactorily. Every employer has a last straw, and Vannoy's violation of the performance improvement plan was the Bank's. Retaliation had nothing to do with his discharge.

### B. FMLA claims

#### 1. Interference with FMLA Leave

Vannoy claims the Bank interfered with his right to take FMLA leave when (1) the Bank mailed him a defective notice of FMLA rights, and (2) when the Bank interfered with his right to take leave on December 21, 2010. The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided by this title." 29 U.S.C. § 2615(a)(1). To prove an FMLA interference claim the plaintiff must show: (1) he

9

was an eligible employee; (2) the defendant was a qualified employer under the FMLA; (3) that he was entitled to leave under FMLA; (4) he notified his employer of his intent to take leave; and (5) the employer denied FMLA benefits to which he was entitled. *Ranade v. BT Ams., Inc.*, 1:12-CV-01039, 2013 WL 5818019 (E.D. Va. Oct. 28, 2013) *aff'd*, 13-2428, 2014 WL 3827676 (4th Cir. Aug. 5, 2014) (citing *Ainsworth v. Loudon Cnty. Sch. Bd.*, 851 F. Supp. 2d 963, 975 (E.D.Va.2012)). In addition, the plaintiff must prove the denial of FMLA benefits prejudiced him. *Anderson v. Discovery Commc'ns, LLC*, 517 Fed. App'x. 190, 196 (4th Cir. 2013).

### a. November absence

Vannoy says the Bank did not give him proper notice of his FMLA rights with respect to his hospitalization in November 2010. The Bank, however, gave him FMLA leave. It is hard to see how the Bank could have interfered with obtaining leave that it granted, or how any interference harmed Vannoy. No interference occurred in November.

### b. December 21, 2010, absence

Vannoy tried to leave the office, but Harris told him to stay and complete the PIP. Vannoy never told Harris he needed FMLA leave that day and, in fact, did not tell him anything about why he was leaving. After he went home, he did not seek treatment for depression or alcoholism until January.

If Vannoy's absence was medically related to his November FMLA leave, he had a duty to advise his employer of this fact. The regulations provide that "[w]hen an employee seeks leave due to a qualifying reason, for which the employer has previously provided the employee FMLA-protected leave; the employee must specifically reference either the qualifying reason for leave or the need for FMLA leave." 29 C.F.R. § 825.303(b). Vannoy failed to do this. Simply stating, "I have no business being here" does not trigger an obligation on the part of the employer

to ask the employee if he needs FMLA time.[6] The regulation further provides that "calling in sick without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act." 29 C.F.R. § 825.303(b); *see Mondonedo v. Frito-Lay, Inc.*, CIV. PJM 11-570, 2012 WL 1632834 (D. Md. May 8, 2012). Vannoy's statement lacks any indication of his reasoning for leave or a request for FMLA leave.

In short, Vannoy did not tell the Bank he needed FMLA leave, whether related to the November hospitalization or due to an independent ailment. The Bank, therefore, did not interfere with his FMLA rights in December.

### 2. Vannoy's retaliation claim fails

The Court analyzes FMLA retaliation claims under the same burden-shifting analysis applied in ADA claims. *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 550-51 (4th Cir. 2006); *Weth v. O'Leary*, 796 F. Supp. 2d 766, 781 (E.D. Va. 2011) ("The Fourth Circuit has held where there is no direct evidence of FMLA retaliation, the indirect method of proof known as the *McDonnell Douglas* framework . . . applies."). The plaintiff must show he engaged in protected conduct, he suffered an adverse action, and a causal link exists between the protected conduct and the adverse action. If this burden shifting is met, the employer must articulate a legitimate, nondiscriminatory reason for the action.

As discussed, Vannoy cannot establish he engaged in protected activity, and even if he could, he fails to establish a causal link between the protected activity and the adverse employment action. The Bank granted Vannoy FMLA leave through December 10, 2010, based upon Vannoy's physician's documentation. Vannoy took affirmative steps to return to work

---

[6] Substance abuse may be a serious health condition in some instances, but FMLA leave "may only be taken for treatment for substance abuse by a health care provider or by a provider of health care services on referral by a health care provider." 29 C.F.R. § 825.119. Vannoy did not alert the Bank to any such referral.

early on November 15, 2010, and his physician released him to his full work duties. Vannoy then failed to properly communicate with management regarding his absences from work. He also disregarded specific directions to complete an assignment. The evidence shows that the Bank fired Vannoy because of his misconduct, not in retaliation for anything.

### III. Conclusion

For the reasons set forth above, the Court GRANTS the defendant's motion for summary judgment. (Dk. No. 58.)

The Court will enter an appropriate order.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

Date: November 17, 2014
Richmond, VA

/s/ John A. Gibney, Jr.
United States District Judge